```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

UNITED STATES OF AMERICA        *

vs.                             *

CONSTANTINE VARSAMAS VARAZO,    *     CASE NO. 4:21-CR-32 (CDL)
II,
                                *
     Defendant.
                                *
```

O R D E R

Defendant has filed a motion for a new trial (ECF No. 144) based upon (1) alleged error in admitting hearsay evidence of the contents of a bookbag containing drugs and a gun, (2) a violation of Defendant's Confrontation Clause rights by the admission of hearsay evidence regarding the bookbag and its contents, and (3) trial counsel's influence on Defendant's decision not to testify and counsel's decision not to call a witness.  Because the interests of justice do not require a new trial, Defendant's motion is denied.  Fed. R. Crim. P. 33(a).

THE JURY VERDICT

The jury found the Defendant guilty of the three counts charged in the indictment: (1) possession with intent to distribute methamphetamine weighing at least 50 grams or more, (2) possession with intent to distribute heroin, and (3) possession of a firearm in furtherance of a drug-trafficking crime.  Jury Verdict 1-2, ECF No. 93.

DISCUSSION

Defendant was a passenger in a vehicle driven by one of his co-defendants and also occupied by another co-defendant. Randolph County Sheriff's Deputy Chandler Buchanan attempted to make a traffic stop of Defendant's vehicle. Instead of stopping, the driver of the vehicle occupied by Defendant fled, leading Buchanan on a multi-county, high-speed, nighttime pursuit. During the pursuit, Buchanan observed items being thrown from the vehicle he was chasing. He eventually stopped the Defendant's vehicle and arrested the driver, the Defendant, and the third occupant.[1]

Four days after their arrest, James Eidson, who was an employee of Miller Supply Company, found a "bookbag" in the ditch on the property of Miller Supply Company that fronted the highway where the high-speed chase had occurred four days earlier. Eidson provided the bag with its contents intact to his boss, Cliff Miller. Miller contacted Russell Chapman, a local probation officer whom he knew. After inspecting the bag and observing drugs and a gun inside the bag, Chapman called the Randolph County Sheriff's Department. An officer with the sheriff's department, Wallace Price, seized the bag and its contents as evidence, which he later gave to evidence custodian Darrell Dowdey.

---

[1] Defendant's co-defendants entered into plea agreements with the Government, with one of his co-defendant's testifying for the Government at Defendant's trial.

A. Hearsay and Confrontation Clause

At trial, the Government called both Buchanan and Chapman as witnesses. During his direct examination by Government counsel, Buchanan testified that Chapman contacted the Randolph County Sheriff's Office after he had "seen what he was looking at" in the bookbag. Trial Tr. Vol. I 46:19-46:24, ECF No. 109. Government's counsel then asked Buchanan, "what do you mean, 'when he seen what he was looking at'?" *Id.* at 46:25-47:1.

Defendant's counsel objected as follows: "Excuse me for interrupting, but that calls for hearsay." *Id.* at 47:3-4. Government's counsel responded to the objection as follows: "Officer Buchanan just testified that Rusty Chapman, when he seen what he was looking at, called in to the Russell (Randolph) County Sheriff's Office. I asked him what did he mean, 'when he seen what he was looking at,' repeating the words that he just said." *Id.* at 47:6-10. When the Court pointed out that Defendant's counsel "contends that what Chapman told [Buchanan] was hearsay," Government's counsel replied that she did not "ask for Officer Buchanan to testify as to what Chapman said. [She] asked him what he meant by 'what he seen, what he was looking at,' what was the information that was relayed." *Id.* at 47:11-16. Defendant's counsel responded, "[t]hat's still hearsay." *Id.* at 47:17. The Court then asked Government's counsel whether she offered Chapman's statement to show what Buchanan "did in response to it

3

or for the truth of what was said?" *Id.* at 47:18-20. Government's counsel responded that the statement was "to show what he did in response to it . . . to show how that book bag got from the side . . . of the road to police custody." *Id.* at 47:21-48:2. The Court thus overruled the objection, explaining that if the Government was "offering it for that purpose, it is not hearsay." *Id.* at 48:4-5.

Buchanan then answered the Government's question regarding what he meant by "[w]hen [Chapman had] seen what he was looking at": Chapman "opened a book bag, and there [were] items in the . . . book bag that appeared to be narcotics. And there was also a firearm inside the book bag." *Id.* at 48:17-20.

The Court then gave the following limiting instruction to the jury: "Ladies and gentlemen, that testimony is admitted not to show what was actually in the bookbag but to show what law enforcement did in response to receiving that information. Otherwise, it would be [a] statement of a witness who's not in court, and they can't testify as to those type items for the truth of what they said. There can be other evidence of that, but that would be hearsay. So the purpose for that evidence at this point is for them to show what was done in response to hearing that information." *Id.* at 48:21-49:4.

To the extent that Defendant maintains this evidence was hearsay, he is wrong. The evidence was not admitted to show the

4

contents of the bag, i.e., the truth of what Chapman told Buchanan—that a gun and drugs were in the bag. The evidence was admitted to show why Buchanan and the Randolph County Sheriff's Office took custody of the bookbag and its contents. They took control of it because Chapman told them he had located a bookbag with a gun and drugs. Because the evidence was not admitted for the truth of the matters asserted in the statement, it was not hearsay. And the Court explained this to the jury in its limiting instruction. Moreover, Chapman later testified in court and subject to cross-examination that he found the gun and drugs in the bag, thus eliminating any hearsay taint. The Court's overruling of the specific hearsay objection made by Defendant's counsel to the Buchanan testimony was not error. Defendant's counsel made no objection that the Court's ruling violated his Confrontation Clause rights, and it is difficult to understand how such an objection could have been made in good faith given that Chapman eventually testified at the trial and Defendant had a full opportunity to cross-examine him. To obtain a new trial, the Court must find that the interest of justice requires it. Fed. R. Crim. P. 33(a). The interest of justice certainly does not require or authorize a new trial based upon the Court's admission of evidence consistent with the Federal Rules of Evidence which the Defendant had an opportunity to confront.

Defendant's motion for new trial broadly argues that it was error to admit evidence that Eidson found the bookbag in a ditch near the road where the chase occurred. That evidence was introduced through the testimony of probation officer Chapman. Notably, no objection was made at trial as to that testimony. Therefore, this alleged error, which is raised for the first time in Defendant's motion for new trial, requires a slightly different analysis. The standard for granting a new trial remains the same— does the interest of justice require a new trial? But the absence of an objection at trial factors into that analysis.

Chapman testified that the owner of Miller Supply called him about the bookbag found by his employee, James Eidson. Specifically, Chapman testified at trial that Miller told him that "one of his employees found a backpack in the ditch of his business there on Highway 82 that he thought had suspected drugs and a gun in it." *Id.* at 80:3-6. Chapman further testified that he "drove to Miller Supply there in Cuthbert on Highway 82" and "met Mr. Miller and a James Eidson, who is the employee that actually found the bag laying in the ditch." *Id.* at 80:11-14. With Miller and Eidson present, he "opened up the bag and looked inside of it, and [he] saw what [he] suspected to be methamphetamine, a handgun, and some scales." *Id.* at 80:15-17. Thus, Chapman testified as to what Eidson and Miller told him about where they found the bag that contained the gun and the drugs. The Government did not call

6

Eidson or Miller as witnesses, and it made no attempt to explain whether they were unavailable. Consequently, Chapman's testimony that Eidson and Miller told him that Eidson found the bag in the ditch near the road where the chase had occurred was hearsay. As noted previously, however, Defendant's counsel did not object to the testimony. While he arguably had a standing objection to the admissibility of the bag and its contents based on chain of custody grounds, his previous objection regarding the Buchanan testimony certainly did not preserve his objection to Chapman's testimony. Perhaps counsel made a tactical decision not to object to the evidence which could have easily been confirmed by Eidson. Had the Government been forced to call Eidson, it may have strengthened the Government's case by eliminating doubt that may could have arisen in the absence of Eidson's live testimony. Or Defendant's counsel may have just decided not to run the risk of annoying the jury by objecting to evidence that counsel knew was essentially uncontested.

Whatever Defendant's counsel's motivation for not objecting, he needed to object to preserve any claim of error. *See* Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."); *see also* Fed. R. Evid. 103. The Court understands that it could find

7

that the interest of justice requires a new trial if the admission of the unobjected to evidence amounts to "plain error."  A "plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b).  For there to be "plain error," however, (1) the defendant must not have "affirmatively waived" the error; (2) the "error must be clear or obvious"; (3) the error must have affected the outcome of the trial; and (4) the error must seriously affect the "fairness, integrity or public reputation of judicial proceedings."  *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks and citation omitted).[2]

The admission of this unobjected to hearsay evidence does not constitute plain error because it likely had no effect on the outcome of the trial.  It arguably allowed the Government to supply a missing link in the chain of custody through hearsay evidence.  But the bag containing the drugs and the gun would have been admitted even if that link had not been established.  It is well established that a break in the chain of custody goes to the weight that the jury may give to the evidence and does not affect its admissibility.  *United States v. White,* 569 F.2d 263, 266 (5th

---

[2] The Court understands that the standard for granting a new trial is whether the interest of justice requires it.  Fed. R. Crim. P. 33(a).  The Court finds that under the circumstances presented here, where the basis for the new trial is evidence that was not objected to at trial, the plain error analysis, while not necessarily dispositive, is helpful in evaluating what the interest of justice requires.

8

Cir. 1978).[3]  This principle applies whether the chain is broken before or after the seizure of the evidence by law enforcement officers.  *Id.*  Allowing Chapman to relay how he learned of the previous whereabouts of the bag and what he did in response likely had no effect on the outcome of the trial.  With no plain error in the admission of the hearsay testimony, Defendant's claim that the interest of justice requires a new trial is unpersuasive.

Defendant's counsel likewise did not object to Chapman's hearsay testimony on Confrontation Clause grounds.  The Court finds to the extent a Confrontation Clause violation occurred, it was not plain error.  No matter how skillful Defendant's trial counsel may have been, his cross-examination of Eidson would have likely made no difference, which may explain why he did not object.  Eidson would have simply testified that he found the bag in the ditch.  It is not even clear that such evidence would be considered of a sufficiently testimonial nature to implicate the Confrontation Clause.  *See Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 310 (2009) (listing types of evidence considered testimonial for Confrontation Clause purposes: (1) "*ex parte* in-court testimony or its functional equivalent," such as "affidavits, custodial examinations, prior testimony that the

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) extra-judicial statements "contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." (internal quotation marks omitted) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)). Here, Eidson simply told his boss in essence, "look what I found." Because there was no clear Confrontation Clause error and the lack of opportunity for cross-examination likely made no difference in the outcome of the trial, the Court finds no plain error.

Because no error occurred with regard to the testimony of Buchanan and no plain error occurred regarding the unobjected to testimony of Chapman, the interest of justice does not require a new trial on hearsay or Confrontation Clause grounds.

B. <u>Defendant's Other Grounds</u>

Defendant's other grounds do not require a new trial nor merit much discussion. Suffice it to say that Defendant was thoroughly advised by the Court of his right to testify and that the decision was his and not his attorney's. He voluntarily chose to exercise his right not to testify. His regret after the fact rings hollow. Furthermore, his second-guessing his attorney's decision not to

10

call a witness likewise falls short.  Legitimate tactical reasons existed for counsel's decision.  The interest of justice does not require a new trial in this case.

## CONCLUSION

Based on the foregoing, Defendant's motion for new trial (ECF No. 144) is denied.

IT IS SO ORDERED, this 24th day of February, 2023.

S/Clay D. Land<br>
CLAY D. LAND<br>
U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA